[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a suit for legal separation. Both of the parties had resided in the marital home at 60 Constance Lane, Stamford, Connecticut, since they purchased that home in 1972. The defendant still resides there. The plaintiff left the home in February 1991, after the institution of this action.
The plaintiff, Judith Rodwin, is 47 years of age and in good health. The defendant, Roger Rodwin, is 54 years of age and in relatively good health. The parties were married on June 19, 1965. During this 26 year marriage, the parties had two sons. Both sons are now over the age of 18. Scott, the older son, has graduated from Cornell University, while David, the younger, is a student at Princeton.
The defendant husband is a graduate of Princeton (1958) and Columbia law School (1961). After early practice in a family law firm and real estate business, the defendant joined Sterling Drug Inc.'s law department in 1965 and rose to the position of Assistant General Counsel. His position with that company was terminated in August, 1989, as part of the restructuring of management following the company's acquisition by Kodak, Inc.
The plaintiff wife graduated from the University of Pennsylvania in 1965 with a bachelor of science degree. Having married soon thereafter, she has worked outside the home only CT Page 9796 sporadically, primarily as an occupational therapist. In May of this year, she secured a masters degree in urban planning from Hunter College.
This plaintiff has testified that the marriage has broken down irretrievably. Both parties appear to have been excellent parents, each participating in school, temple and sports programs with the boys. The plaintiff focused on school, social and cultural functions; the defendant support the boys scholastic and athletic endeavors. The defendant coached the boys' little league and soccer teams. In earlier years, the family usually recreated and vacationed as a unit.
In the 1980s, with the boys in high school and then college, the plaintiff began to broaden her range and acquaintances, especially when she commenced her matriculation at Hunter in 1986. She perceived herself as having grown and matured over the years and as being no longer the 19 year old whom the defendant first married. She began to recognize the defendant as being rigid and controlling in family or personal decision making processes; treating her as a servant or a child.
While the defendant did agree to join her in marriage counseling, he abandoned the effort shortly thereafter.
The plaintiff left the marital home in February, 1991 because she believed it impossible to continue living there. With her husband out of work and at home, following her around and being critical of her, she felt intimidated and believed she had been threatened.
The defendant testified that he did not believe the marriage had broken down irretrievably. However, he did testify that in the past decade, the plaintiff has been spending more and more time away from the home, so that frequently he found himself home alone. He also believed that the plaintiff appeared to be establishing relationships alone, even emotional relationships, with persons outside the family.
During the last three years, he claims to have been eating his dinner alone and attending to the household chores alone. Sexual relations decreased and finally ended in 1987.
The defendant also complained that the plaintiff gradually began to withdraw her wifely support for his work and even hampered him, especially during the period beginning in 1985 when the deferred compensation incentive program, requiring extraordinary achievements, was introduced at Sterling Drug. She ceased to attend company social functions with him to his embarrassment. CT Page 9797
The perceptions of each of the parties has in part been contradicted by the other and may or may not be warranted. However, the result: an emotional and sexual separation, as if strangers living in the same house, and finally a physical separation now of some duration, leads the court to conclude that this marriage has broken down irretrievably and that a legal separation pursuant to General Statutes 46b-40 should be ordered.
In determining the issues of the distribution and assignment of property and the award of alimony, the court has considered the factors set forth in General Statutes Sections 46b-81 and 46b-82: the length of the marriage, the causes for a legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties, the opportunities of each for future acquisition, and the contribution of each in the acquisition, preservation or appreciation in value of their respective estates.
In his final year with Sterling Drug, the defendant's salary was approximately $136,000. His annual bonus was in the range of $20,000. He, therefore, had gross earnings of approximately $156,000.
Upon his termination, the defendant entered into a severance agreement with Sterling Drug for payment as a consultant of a salary continuance in the total sum of $272,000.00, payable bimonthly for a period to end on February 29, 1992. This amounted to payment of $8,500 per month. The defendant has been vigorously seeking a comparable position as a corporate counsel. The defendant has not secured a position at the time of the hearing.
Other than some interim full-time and part-time employment at $8.00 per hour, the plaintiff has been employed within the home as a mother and housewife during the marriage since the children's births. She is currently seeking employment in the area of urban planning for which she has earned her masters. She was not employed at the time of the hearing.
The court is cognizant that for each party, one because of the nature of his qualifications and the other because of the lack of any substantial employment experience, the probability of any immediate employment in the current job market is problematical.
The primary marital assets are the family residence held in joint names. There is a mortgage on the property of about $24,000. The parties differ in their present valuation of the property. The plaintiff believes it has a market value of $395,000. The defendant has presented evidence that the home has a present market value of $340,000. There is a stock portfolio with a valuation as of April 30, 1991 of $412,814. CT Page 9798
The value of the deferred compensation plan previously mentioned was $151,892 as of March 15, 1991. The defendant's 401K plan had a value of $128,000 on that date. The defendant has an IRA with a value of $22,000 and the plaintiff's IRA has a value of $6,000. Finally, there is a life insurance policy with a present cash surrender value of approximately $6,000.00.
The pension plan is fully vested. It provides a lifetime pension benefit: $2,400 per month attributable to the basic plan and $1,200 per month attributable to a supplemental plan allowed in conjunction with the defendant's severance contract.
The defendant owns a one-half unit in a tax shelter plan, Warren Properties Limited Partnership, which appears to have no present market value because of deductions taken. The defendant also received 1,200 Kodak Stock Options at $45.875 per share.
The money presently in the deferred compensation fund earns interest at Moody's reported prime rate plus 5%, or approximately 14.5%, at the time of the hearing, although that amount will vary depending on the fluctuation of prime. The projection of interest accumulation by the fund managers indicated a fund balance of approximately $790,000 as of March 1, 2003 and a 15 year payment of $116,000 per year commencing on said date. The plan does provide for a lump sum payment upon the husbands early retirement, March 1, 1992, and/or the election to commence the 15 year payment on said date.
Each of the parties has submitted claims for relief. The court has given these claims consideration under the statutory standards and has determined the distribution of assets and order for alimony as follows.
As To The Distribution Of Assets
1. The marital residence shall be listed for sale within a reasonable period, but not to be sold with a closing date prior to March 1, 1992, so as to allow the defendant to take advantage of his lifetime $125,000 capital gain exclusion. The property shall be listed for sale at a price of $340,000 and shall be sold at a price agreeable to the parties. If that listing price is objected to by either party and the parties cannot agree on a reasonable price, the Superior Court for the State of Connecticut shall retain jurisdiction to make such determination. To that end, the court will direct a valuation determined by three appraisers, one selected by the plaintiff, one selected by the defendant, and one selected by the two appraisers. The party seeking such evaluation by appraisers shall assume the cost of the appraisals. CT Page 9799
In light of his express desire to retain the residence as a home for himself and his sons, the defendant shall have the option to purchase the plaintiff's interest in the marital residence to be exercised in writing on or before January 2, 1992, based on a reasonable market value of the house of $340,000. If that valuation is not acceptable to either party, then at a valuation determined by three appraisers, one selected by the plaintiff, one selected by the defendant, and one selected by the two appraisers. The party seeking such a valuation shall assume the cost of the appraisals.
In the event the defendant exercises his right to purchase the plaintiff's 50% interest in and to the marital residence, he shall pay her an amount equal to one-half the fair market value of the marital residence of $340,000 or as determined by the appraisers, less one-half the balance due on the first mortgage and less one-half of an estimated real estate commission of 5% of the market value. Said amount shall be payable one-half in cash on or before January 2, 1992 or as soon thereafter as can be fixed if there is an appraisal evaluation. The balance is to be paid in five years (or sooner if the property is sold) together with interest at the rate of 8% per annum, which interest shall be payable monthly. The plaintiff will execute a quit-claim deed in favor of the defendant, who shall in turn execute a mortgage to secure the balance in favor of the plaintiff. These deeds shall be exchanged at the time of the initial 50% payment. If the defendant fails to make timely payment, the house shall be immediately listed for sale as provided herein. In the event the marital residence is sold, the parties shall equally divide the net proceeds: the gross selling price, less the balance due on the first mortgage, real estate commission and other usual closing expenses.
Until such time of sale the defendant shall have the right to the exclusive use of the residence and shall be solely obligated to pay any and all costs associated herewith including but not limited to mortgage, taxes, insurance, utilities, maintenance and upkeep.
2. The plaintiff shall receive a fifty (50%) percent interest in and to the defendant's pension plan with Sterling Drug, Inc., including the basic and supplemental benefit, and that a Qualified Domestic Relations Order shall enter to effectuate the division of the pension plan.
3. The plaintiff shall receive fifty (50%) interest in and to the defendant's 401K with Sterling Drug, Inc., and that a Qualified Domestic Relations Order shall enter to effectuate the division of the 401K.
4. The defendant shall pay to the plaintiff an amount equal to one-third (1/3) of any and all amounts received, within 30 days of the receipt of same, after deduction of the income taxes due on CT Page 9800 the one-half of the monies received, from the deferred compensation fund. Said payments shall be deemed a property distribution to the plaintiff, non-taxable to her, and non-modifiable. The plaintiff shall be named a beneficiary of 50% of the balance due in said account upon the death of the defendant prior to payment of the entire monies in said account.
5. The defendant shall transfer to the plaintiff one-half of all monies, stocks, bonds or otherwise, held in the three brokerage accounts at Sherson Lehman Brothers, Bishop, Rosen and Co., Inc. and Prudential Bache. Said stocks shall be transferred such that the parties maintain an equal amount of shares in each entity and an equal tax basis in all stocks transferred.
6. The defendant shall transfer a 50% interest in and to the Warren Properties Limited Partnership.
7. The defendant shall retain sole ownership of his IRA account in the amount of $22,000, the 1,200 Kodak stock options, and the $9,292 cash surrender value of life insurance.
8. The plaintiff shall retain sole ownership of her IRA account in the amount of $6,000.
As To Alimony
The defendant shall pay to the plaintiff, until her death or remarriage or cohabitation by the plaintiff for a period of six months with an unrelated person as such cohabitation is defined by General Statutes Section 46b-86 or until otherwise terminated by an order of a court of competent jurisdiction, as alimony an amount equal to $2,500 per month. The defendant shall have a right to seek a suspension of this payment as of March 1, 1992 if the defendant has not obtained employment and only for such period of time as the defendant remains unemployed, provided the defendant does not have other income available to meet this obligation. It is specifically contemplated that if the defendant remains unemployed at such time, that the plaintiff will receive her 50% of the monthly pension benefit. In any event, because of the probability of employment by one or both of the parties and because of the effect of the transfers ordered above, the amount of alimony shall be modifiable by the Superior Court of the State of Connecticut or such other court of competent jurisdiction.
The defendant shall cooperate with the plaintiff to assist her in procuring medical insurance through the exercise of her COBRA rights as well as any other rights provided legally separated spouses under the Sterling Drug, Inc. medical benefits plan.
As To Attorneys' Fees CT Page 9801
The plaintiff has requested that the defendant pay to the plaintiff $10,000 as and for a contribution toward her attorney's fees. Because of the distribution ordered here, the plaintiff may be in a position to meet this obligation without contribution. The court will therefore reserve jurisdiction and action on this request, until the parties have an opportunity to be heard in full.
As To Personal Property
The parties shall mutually divide their personal property within six days of the date of this judgment and if the parties fail to agree, the matter shall be referred to the FRO for a recommendation. The Superior Court of the State of Connecticut shall retain jurisdiction over the division of personal property.
A decree of legal separation may enter.
NIGRO, J.